UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ALEX BURTON, individually and on behalf of all others similarly situated, | § § DOCKET NO. 3:17-cv-255 |
| Plaintiff, | § § JURY TRIAL DEMANDED |
| vs. | § § COLLECTIVE ACTION § PURSUANT TO 29 U.S.C. § 216(b) |
| AGILITY ENERGY, INC. | § § CLASS ACTION (Fed. R. Civ. P. 23) |
| Defendant. | § § |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### Summary

1. Plaintiff Alex Burton ("Plaintiff" or "Burton") worked for Defendant Agility Energy, Inc. ("AEI" or "Defendant") as a sand coordinator. Burton and other similarly situated sand coordinators were paid a salary and a shift (or day) rate but no overtime compensation when working more than 40 hours a week. AEI's pay practices violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA") and the New Mexico Minimum Wage Act, NMSA §50-4-19, *et. seq.* ("NMMWA").

### Jurisdiction & Venue

2. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391 since a substantial part of the events giving rise to this claim occurred in this District and Division. Burton performed work-related tasks for AEI in this District.

## PARTIES

5. Burton was employed by AEI and regularly worked in excess of 40 hours a week without receiving overtime pay. His written consent is attached as Exhibit A.

6. Burton represents at least two classes of similarly situated co-workers.

7. First, Burton brings this action on behalf of himself and all other similarly situated salary/shift rate employees under the collective action provisions of the FLSA. *See* 29 U.S.C. §216(b). The FLSA Class was subjected to the same FLSA violations as Burton and is properly defined as:

> **ALL SAND COORDINATORS EMPLOYED BY AGILITY ENERGY, INC. DURING THE PAST 3 YEARS WHO WERE PAID A SALARY AND SHIFT RATE WITH NO OVERTIME COMPENSATION**

The members of the FLSA Class are easily ascertainable from AEI's business and personnel records.

8. Second, Burton represents a class of similarly situated sand coordinators under the NMMWA pursuant to Federal Rule of Civil Procedure 23. The NMMWA Class is defined as:

> **ALL SAND COORDINATORS EMPLOYED BY AGILITY ENERGY, INC. WHO WERE PAID A SALARY AND SHIFT RATE WITH NO OVERTIME COMPENSATION**

9. Collectively, the FLSA Class Members and NMMWA Class Members are referred to as "Salary/Shift Rate Class Members."

10. Defendant **Agility Energy, Inc.** is a Utah corporation doing business throughout the United States, including Texas and New Mexico. AEI is a petroleum and frac proppant distributor. Its employees routinely use, handle, sell and/or work on pumps, filters, telephones, and hand tools. These items were produced for interstate commerce and/or traveled in interstate commerce. AEI is covered by the FLSA and NMMWA and has been during the applicable statute of limitations. AEI is therefore obligated to pay its non-exempt employees overtime under the FLSA and NMMWA. AEI may be served through its registered agent: **CT Corporation System, 1999 Bryant Street, Suite 900, Dallas, Texas 75201.**

## COVERAGE UNDER THE FLSA

11. At all times hereinafter mentioned, AEI has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d).

12. At all times hereinafter mentioned, AEI has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. §203(r).

13. At all times hereinafter mentioned, AEI was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

14. At all times hereinafter mentioned, Burton and the Salary/Shift Rate Class Members were engaged in commerce or in the production of goods for commerce.

## FACTUAL ALLEGATIONS

15. AEI is a petroleum and frac proppant distributer. It distributes across the United States, included Texas and New Mexico.

16. A more common name for AEI's business is "fracking." As part of its services, AEI uses treated sand. This sand is used a proppant – a solid material designed to keep an induced hydraulic facture open during (or after) a fracturing treatment.

17. Sand is a critical part of the hydraulic fracturing process.

18. Sand coordinators work to ensure the required sand is stored on the wellsite and loaded into blenders for use as a proppant.

19. For example, sand coordinators work exclusively on an oil and gas wellsite, inspect the sand delivered and transfer the sand to storage facilities on the well site.

20. Sand coordinators are an integral part of the hydraulic fracturing crew.

21. The sand coordinators' work is an essential part of the well stimulation production process.

22. No advanced degree is required to become a sand coordinator. In fact, AEI regularly hires sand coordinators who only have a high-school diploma (or less).

23. For example, Burton did not have any advanced degree.

24. Being a sand coordinator is not work requiring specialized academic training as a standard prerequisite.

25. To the extent sand coordinators make "decisions," the decisions do not require the exercise of independent discretion and judgment.

26. Instead, sand coordinators apply well-established techniques and procedures.

27. If sand coordinators evaluate sand quality, they do so using established standards.

28. Sand coordinators do not set sand quality standards.

29. Sand coordinators are not permitted to deviate from established sand quality standards.

30. Sand coordinators are blue collar workers. They rely on their hands, physical skills, and energy to perform manual labor in the oilfield.

31. With these job duties, sand coordinators are clearly **non-exempt** under the FLSA and NMMWA.

32. Sand coordinators work long hours in excess of 40 hours a week.

33. While in the field, sand coordinators regularly work 12 hours in a day, and more than 80 hours in a week.

34. AEI does not pay its sand coordinators overtime for hours worked in excess of 40 in a workweek.

35. Instead, AEI pays sand coordinators base salary, plus shift (or day) pay for days worked out in the field. This shift/day pay is not overtime pay, but rather a lump sum payment that must be included in the sand coordinators' regular rates of pay.

36. Burton and the Salary/Shift Rate Class Members worked for AEI as sand coordinators over the past three years throughout the United States, including Texas and New Mexico.

37. As a result of AEI's pay policies, Burton and the Salary/Shift Rate Class Members were denied the overtime pay required by federal law.

38. AEI keeps accurate records of the hours, or at least days, its sand coordinators work.

39. It also keeps accurate records of the amount of pay sand coordinators receive.

40. Despite knowing the FLSA and NMMWA's requirements and that its sand coordinators regularly worked more than 40 hours in a workweek, AEI does not pay them overtime.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

41. Burton incorporates all previous paragraphs and alleges that the illegal pay practices AEI imposed on Burton were likewise imposed on the Salary/Shift Rate Class.

42. In addition to Burton, AEI employed other sand coordinators who worked over forty hours per week with no overtime pay, were paid a salary plus shift-rate, and were classified – improperly – as exempt employees. These Salary/Shift Rate Class Members performed the job duties described above and they were subjected to the same unlawful policies which constitutes a willful violation of the FLSA and NMMWA. They are all entitled to overtime after 40 hours in a week and the overtime they are entitled to must be calculated in a manner consistent with the requirements of the FLSA and NMMWA. Burton and the members of the Salary/Shift Rate Class are similarly situated in all relevant respects.

43. AEI imposed a uniform practice or policy on Burton and all Salary/Shift Rate Class Members regardless of any individualized factors.

44. AEI's failure to pay wages and overtime compensation at the rates required by the FLSA and NMMWA result from generally applicable, systematic policy and/or practice which are not dependent on the personal circumstances of any member of the Salary/Shift Rate Class.

45. Burton's experiences are typical of the experiences of all Salary/Shift Rate Class Members.

46. Burton has no interests contrary to, or in conflict with, the members of the Salary/Shift Rate Class Members. Like each member of the proposed classes, Burton has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

47. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

48. Absent this action, many members of the FLSA Class and NMMWA Class likely will not obtain redress of their injuries and AEI will retain the proceeds of their violations of the FLSA and NMMWA.

49. Furthermore, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

50. The questions of law and facts common to each of the FLSA and NMMWA Salary/Shift Rate Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether AEI employed the FLSA and NMMWA Salary/Shift Rate Class Members within the meaning of the FLSA and NMMWA;

      b. Whether the FLSA and NMMWA Salary/Shift Rate Class Members were exempt from overtime;

      c. Whether AEI's decision not to pay overtime to the FLSA Class Members was made in good faith; and

      d. Whether AEI's violation of the FLSA was willful.

51. Burton's claims are typical of the FLSA and NMMWA Salary/Shift Rate Class Members since both have sustained damages arising out of AEI's illegal and uniform employment pay policy.

52. Burton knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

53. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

54. The FLSA Class should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b). Therefore, the FLSA Class is properly defined as: **All Agility Energy, Inc. sand coordinators employed in the last 3 years who were paid a salary and a shift rate with no overtime compensation.**

### CAUSE OF ACTION
### Violation of the FLSA and NMMWA

55. Burton incorporates the preceding paragraphs by reference.

56. As set forth herein, AEI violated the FLSA and NMMWA by failing to pay Burton and the Salary/Shift Rate Class Members overtime at one and one half times the regular rate of pay under the hourly system, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a); NMSA § 50-4-22.

57. At all relevant times, AEI has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

58. AEI employed Burton and each member of the Salary/Shift Rate Class.

59. AEI's pay policy denied Burton and the Salary/Shift Rate Class Members overtime compensation at the legal overtime rates required by the FLSA and NMMWA.

60. AEI owes Burton and the Salary/Shift Rate Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

61. AEI knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA and NMSA. Its failure to pay overtime to Burton and the Salary/Shift Rate Class is willful.

62. Due to AEI's FLSA and NMMWA violations, Burton and the Salary/Shift Rate Class Members are entitled to recover from Burton their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

63. The improper pay practices at issue were part of a continuing course of conduct, entitling Burton and Salary/Shift Rate Class Members to recover for all such violations, regardless of the date they occurred.

## JURY DEMAND

64. Burton demands a trial by jury.

## PRAYER

WHEREFORE, Burton prays for:

    a. An order certifying this case as a collective action for the purposes of the FLSA claims under 29 U.S.C. Sec. 216(b);

    b. An order certifying class action(s) under F.R.C.P 23 for the purposes of the claims under New Mexico law;

    c. An order finding AEI liable for violation of state and federal wage laws with respect to Burton and all Salary/Shift Rate Class Members covered by this case;

    d. A judgment against AEI awarding Burton and the Salary/Shift Rate Class Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages and/or penalty damages;

    e. An order awarding attorney fees, costs, and expenses;

    f. Pre- and post-judgment interest at the highest applicable rates; and

    g. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*  
    Michael A. Josephson  
    State Bar No. 24014780  
    mjosephson@mybackwages.com  
    Richard M. Schreiber  
    State Bar No. 24056278  
    rschreiber@mybackwages.com  
    Andrew Dunlap  
    State Bar No. 24078444  
    adunlap@mybackwages.com  
    **JOSEPHSON DUNLAP**  
    11 Greenway Plaza, Suite 3050  
    Houston, Texas 77046  
    713-352-1100 – Telephone  
    713-352-3300 – Facsimile  

    **AND**

    Richard J. (Rex) Burch  
    Texas Bar No. 24001807  
    **BRUCKNER BURCH, P.L.L.C.**  
    8 Greenway Plaza, Suite 1500  
    Houston, Texas 77046  
    713-877-8788 – Telephone  
    713-877-8065 – Facsimile  
    rburch@brucknerburch.com  

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**